FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 26, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHELLE ANN H., | NO: 2:18-CV-3-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 9, 11. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Gary R. Penar. Defendant is represented by Special Assistant United States Attorney Michael Howard. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 9, is granted and Defendant's Motion, ECF No. 11, is denied.

**JURISDICTION**

Plaintiff Michelle Ann H.[1] (Plaintiff), filed for disability insurance benefits (DIB) on December 10, 2014, alleging an onset date of January 1, 2013.  Tr. 178-81, 196.  Benefits were denied initially, Tr. 120-22, and upon reconsideration, 125-26. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 4, 2016.  Tr. 37-93.  On September 6, 2016, the ALJ issued an unfavorable decision, Tr. 20-30, and on November 17, 2017, the Appeals Council denied review.  Tr. 1-4. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1968 and was 47 years old at the time of the hearing.  Tr. 178.  She has a bachelor's degree in business administration with minors in communications and human resources.  Tr. 40.  She has work experience working as a human resources executive and manager.  Tr. 41-42.  She testified that she loved working and "if I could work, I would totally work."  Tr. 77.  She cannot work now

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

because she never knows when she is going to feel well.  Tr. 77.  Plaintiff said she used to be a very active person.  Tr. 75.   She used to go on 50-mile bike rides and participated in sprint triathlons.  Tr. 68.

Plaintiff testified that she has pain all over her body "pretty much all the time" due to fibromyalgia.  Tr. 48.  She experiences four different types of pain:  a tingly, prickly nerve pain; muscle pain; deep bone pain; and pain in her connective tissues.  Tr. 48.  The pain comes and goes unpredictably.  Tr.  49.  She also has tenderness that comes and goes.  Tr. 49.  Her pain limits her ability to bend her joints.  Tr. 50.  The pain varies throughout the day.  Tr. 51.  Some days she can be functional for two to six hours.  Tr. 51.  She has good days and bad days and she never knows what to expect.  Tr. 52.  She is sensitive to temperature variations.  Tr. 54.  She is always fatigued and lacks energy.  Tr. 56.   She experiences "fibro fog" and sometimes has difficulty forming thoughts.  Tr. 57.

She also has problems with her thyroid and her right sacroiliac (SI) joint.  Tr. 56, 62.  She spends most of her day either in bed or on the couch.  Tr. 63.  One to three days a week she spends the whole day horizontal; those are bad days.  Tr. 64.  On a good day, she spends 60 to 70 percent of the day horizontal.  Tr. 64.  "Every single day I'm horizontal for a good portion of the day."  Tr. 64.  Even when she is able to be more active, she is not pain free.  Tr. 64.  Sometimes if she is active one day, she will need to lie down the next day.  Tr. 65.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from her alleged onset date of January 1, 2013 through her date last insured of December 31, 2014. Tr. 22. At step two, the ALJ found that Plaintiff has the

following severe impairments: fibromyalgia, fatigue, low back pain, and hypothyroidism. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24.

The ALJ then found that Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> The claimant could lift and carry 10 pounds occasionally. She could stand and walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, kneel, or crawl. The claimant is limited to no more than frequent handling of objects bilaterally. She cannot be exposed to extreme cold or heat and only occasional exposure to wetness or humidity. She can have no use of moving dangerous machinery and no exposure to unprotected heights.

Tr. 24.

At step four, the ALJ found that, through the date last insured, Plaintiff was capable of performing past relevant work. Tr. 28. Alternatively, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as a temporary help agency services clerk, auto club safety program coordinator, or telephone solicitor. Tr. 29-30. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2013, the alleged onset date, through December 31, 2014, the date last insured. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 9. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ failed to consider a lay witness statement; and

4. Whether the ALJ properly considered Plaintiff's RFC.

ECF No. 9 at 5-20.

## DISCUSSION

### A. Symptom Claims

Plaintiff contends the ALJ improperly rejected her symptom testimony. ECF No. 9 at 15-19. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could be expected to cause the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the evidence in the record, and that the evidence partially supports Plaintiff's allegations. Tr. 27. This Court finds the ALJ's reasons are not clear and convincing reasons supported by substantial evidence.

First, the ALJ found Plaintiff has not been as limited by her impairments as she testified. Tr. 27. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom claims. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted Plaintiff complained of pain and stiffness but was not prevented from participating in physical activity. Tr. 27. The ALJ observed Plaintiff was prescribed and encouraged to perform physical therapy and aquatic therapy for relief of symptoms. Tr. 27. According to the ALJ, Plaintiff discontinued therapy "due to monetary constraints but reported that she had to care for her mother, which would be a physical act." Tr. 27.

Plaintiff's participation and therapy and discontinuance from some therapy is not compelling evidence supporting the ALJ's reasoning for several reasons. First, there is a physical therapy record from July 2012 indicating Plaintiff stopped treatment "to care for her mother." Tr. 398. However, the following month, it was noted, "She did quit aquatic physical therapy . . . not to take care of her mother like the therapist reported, but due to cost. She owes them 1200 right now and has to set up an appointment to discuss payment." Tr. 482. This rebuts the July record and is consistent with other statements made by Plaintiff throughout the record indicating that cost is a barrier to therapy and alternative treatments. *See e.g.*, Tr. 491, 495, 600, 715. Second, there is no basis in the record to conclude that caring for her mother involved a "physical act" inconsistent with Plaintiff's allegations, as the ALJ suggests. There is no information in the record about Plaintiff's mother's condition or the extent or nature of care, if any, provided by Plaintiff to her mother, and the ALJ inference is not supported by the record. Indeed, Plaintiff testified that she is not her mother's caretaker, "[t]hat's my dad's job. I can't take of myself, let alone –

or my family, so I can't take that on." Tr. 53. Third, even if Plaintiff did quit therapy to care for her mother, this would have occurred in mid-2012, well before Plaintiff's alleged onset date of January 2013. For these reasons, evidence of Plaintiff's therapeutic activities does not reasonably support the ALJ's conclusion.

Next, the ALJ also noted that Plaintiff reported going on several vacations which required long distance travel. Tr. 27. A claimant's periodic travel may be an insufficient basis for rejecting the claimant's symptom complaints, particularly when there is no indication in the record regarding the claimant's activities while traveling. *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986); *Gonzales v. Berryhill*, 261 F. Supp. 3d 1085, 1096–97 (D. Or. 2017); *Holzberg v. Astrue*, 679 F. Supp. 2d 1249, 1264 (W.D. Wash. 2010). The record mentions a spring break trip to San Diego, Tr. 502, 577, trips to Washington State, Tr. 588, and Seattle, Tr. 539, camping in Montana for a family reunion, Tr. 614, and an unspecified vacation, Tr. 648. The ALJ found it significant that the record does not indicate Plaintiff had difficulty during any trips and that "[h]er apprehension was not enough to prevent her from traveling or altering her vacation plans." Tr. 27. On the other hand, the record does not indicate that Plaintiff had no difficulties, or what activities she engaged in, or whether she had opportunities to rest and have breaks as needed. The ALJ's implication that family vacations and disability are incompatible is without basis in law or the record.

The ALJ further observed that Plaintiff has been physically active.  Tr. 27.

She participated in physical therapy and yoga several times per week and reported

riding her bicycle.  Tr. 27.  A claimant's ability to engage in mild therapeutic

physical activity does not necessarily undermine the claimant's pain allegations.  *See*

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (certain activities such as

limited walking for exercise do not detract from a claimant's credibility as to overall

disability); *Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (unpublished)

(claimant's ability to do some therapeutic exercises was not inconsistent with

allegation that he needed to lie down regularly to alleviate pain).  Plaintiff was

repeatedly advised to exercise regularly and yoga, physical therapy, water therapy,

walking, and even biking and running were recommended.  Tr. 309 (importance of

regular exercise discussed), 316 (plan includes progressive low-impact aerobic

exercise), 322, 328 (management of fibromyalgia includes low-impact routine

exercise), 359 ("continue chronic pain management, exercise program"), 386 ("need

to increase her endorphin release through exercises"), 398, 444 (keep doing yoga),

487, 492, 546 ("keep on swimming walking, and biking").  At times it was noted

that Plaintiff found these activities difficult or resulted in a setback.  *E.g.*, 376 (tries

to do yoga 1-3 x per week and walk, it is difficult but she is able to do it), 386 ("Pain

while constant does not prevent her from walking up to three miles"); Tr. 441 ("She

forces herself to stay active participating in yoga 3 times/week . . . reduced to

forcing herself to go on a short walk"), 588 ("went on a 15 mile bike ride on Sunday

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

she felt great, did Yoga on Monday and then paid the price on Tuesday"), 648 (increased pain when she does not do yoga). It was not reasonable for the ALJ to discredit Plaintiff's symptom claims based on participation in exercise which was recommended treatment for her condition.

The ALJ also found that "most glaringly, she participated in an over seven-mile road race." Tr. 27. The ALJ found that, "[g]iven the pain and lack of energy the claimant alleged that prevented her from caring for her family's basic needs then it should not be possible for her to prepare for and to run a road race." Tr. 27. The ALJ again inferred facts that are not supported by the record. In May 2013, Plaintiff reported that she was able to walk the Bloomsday race with her daughter and in May 2014, she reported that she ran Bloomsday. Tr. 583, 612. However, there is no reference in the record to training or preparation for these races, and as Plaintiff notes, before her illness, she had participated in sprint triathlons and would run up to eighty miles per week. ECF No. 9 at 17 (citing Tr. 56). Furthermore, there are no details about her performance during or completion of the races. Plaintiff's report of participating in Bloomsday, without more, does not reasonably qualify as a clear and convincing reason supported by substantial evidence.

Furthermore, the ALJ's discussion of Plaintiff's activities notably lacks acknowledgement of Plaintiff's complaint that her symptoms are unpredictable, come and go, and that she has good days and bad days. Tr. 48-52, 63-65. Even if Plaintiff's activities did indicate she could sustain a full eight-hour day of working

from time-to-time, none of the activities mentioned by the ALJ or Plaintiff's testimony reasonably suggest that she could sustain that level of activity for an entire work week. *See Rector v. Comm'r of Soc. Sec. Admin.*, __ F.Supp. 3rd __, No. CV 18-217-TUC-LAB, 2019 WL 102084, at *6 (D. Ariz. Jan. 4, 2019); *see also Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) ("SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'").

Second, the ALJ found that Plaintiff noted throughout the record that treatment significantly improved her functioning. Tr. 27. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding a favorable response to treatment may undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ found that "[m]edications and injections have been successful at treating her symptoms." Tr. 27. Plaintiff testified that injections for her sacroiliac joint pain provide "really great pain relief," consistent with her reports throughout the record. Tr. 62, 491, 493, 583, 586, 597, 655. It was reasonable for the ALJ to conclude, based on the record overall, that Plaintiff's SI joint issue is somewhat managed with regular injections.

However, Plaintiff also testified that her SI joint pain is distinguishable from the four types of pain which come and go due to fibromyalgia. Tr. 49, 62. The ALJ

cited only two instances in the record purporting to demonstrate improvement of Plaintiff's fibromyalgia symptoms "throughout the record." Tr. 26-27. The ALJ cited a March 2013 record, which, according to the ALJ, indicated that Lyrica "was increased and effective against pain." Tr. 26 (citing Tr. 492). However, in that record Plaintiff actually reported that "her overall body pain is quite severe making it difficult to go out and meet with people that she enjoys" and asked if there were any changes that could be made in her medications. Tr. 491. The provider increased her Lyrica, but made no note indicating or implying that Lyrica was "effective against pain" as the ALJ asserts. Tr. 492. The ALJ's finding is not supported by this record.

The ALJ is correct that in May 2014 Plaintiff reported "significant relief" from a combination of Kadian, hydrocodone, and Lyrica, and said, "I still have bad days but for the most part [I'm] doing well." Tr. 26, 614. In September 2014, it was noted that Plaintiff's symptoms were "chronic" and "stable," and it was again noted that the combination of medications was "significant relief." Tr. 622. However, by December 2014, Plaintiff stated the medications were no longer providing significant relief, and in May 2015 she characterized her symptoms as "poorly controlled" although the medications provided "some relief." Tr. 626, 644.

It is also noted that despite finding that medication has been successful at treating her symptoms, the ALJ cited various points in the record where Plaintiff complained of significant symptoms despite treatment. In December 2011, Plaintiff

admitted she had taken more hydrocodone than prescribed, and the ALJ noted Plaintiff had violated her pain contract. Tr. 25, 305, 522. She stated she was traveling and unable to deal with the pain. Tr. 522. The ALJ acknowledged that, "[t]hroughout this time the claimant reported her pain as unmanageable and that she needed a better long-term pain management plan." Tr. 25. In December 2013, Plaintiff reported ongoing pain with limited activity, despite treatment with hydrocodone, Lyrica, and Kadian. Tr. 26, 601-02. In January 2014, she was prescribed Sertraline for depression and hydrocodone and morphine sulfate for fibromyalgia but reported that two days per week "she is just flat and gets few things accomplished . . . [e]verything just hurts," and that she was overwhelmed. Tr. 26, 539. Although she was doing yoga twice weekly in May 2015, she reported that "any physical activity [is] very painful." Tr. 715. These records contradict the ALJ's conclusion that Plaintiff reported that medication successfully treated her fibromyalgia symptoms throughout the record. Tr. 27.

Thus, the ALJ's assertion that, "throughout the record, the claimant has noted that her treatments have significantly improved her functioning," Tr. 27, is only reasonably supported by the record regarding her SI joint pain, but not with respect to fibromyalgia. Plaintiff's testimony regarding her SI joint pain is not a basis for finding her symptom complaints unreliable, since her testimony was consistent with the record. With regard to fibromyalgia, the record does not reasonably support the ALJ's finding that Plaintiff reported medication improved her symptoms

"throughout the record." This is not a clear and convincing reason supporting the ALJ's assessment of Plaintiff's symptom complaints.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted the medical opinions of treating providers Scott Magnuson, M.D., and Denise Love, ARNP, and reviewing psychologists Dan Donahue, Ph.D., and Jan Lewis, Ph.D.  ECF No. 9 at 5-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

1.  *Scott Magnuson, M.D., and Denise Love, ARNP*

In July 2016, Ms. Love and Dr. Magnuson co-signed a Physical Medical Source Statement form. Tr. 718-21. Fibromyalgia was noted to cause widespread, constant, varying, and unpredictable pain. Tr. 718. Dr. Magnuson and Ms. Love

indicated Plaintiff could walk one to eight city blocks; sit for 15 to 30 minutes; stand for 10 to 20 minutes; and sit or stand/walk about two hours in an eight-hour workday. Tr. 719. They also indicated Plaintiff would sometimes need to take unscheduled breaks during the day and that she would need to rest for 15 minutes up to the end of the day, depending on the severity of her pain. Tr. 719. Dr. Magnuson and Ms. Love assessed lifting limitations of 20 pounds occasionally and less than 10 pounds frequently as well as some postural limitations. Tr. 720. They also opined that Plaintiff would be off task 25 percent or more of the work day when pain is very high, and she would likely miss one to two days of work per week. Tr. 721.

The ALJ gave the opinion little weight. Tr. 28. The ALJ's entire analysis of the opinion is contained in one sentence:

> Although a nurse practitioner is not considered an 'acceptable medical source' within the regulatory definition [] and is not entitled to controlling weight, the undersigned considered her opinion [] as it was endorsed by Dr. Magnuson and accord it little weight, as the limitations are more restrictive than the claimant's reported activities of daily living.

Tr. 28.

The ALJ appears to have considered the opinion signed by Dr. Magnuson and Ms. Love as the opinion of a non-acceptable medical source which could be rejected for germane reasons. Tr. 28. Since Dr. Magnuson cosigned the opinion and the ALJ acknowledged the opinion was "endorsed by Dr. Magnuson," Tr. 28, the opinion is the opinion of a treating physician and is entitled to the deference

and consideration accorded to the opinion of an acceptable medical source.

Because Dr. Magnuson's opinion was contradicted by the opinion of Dr. Staley who opined Plaintiff was not as limited, Tr. 111-13, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Magnuson's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ gave little weight to the opinion for the sole reason that "the limitations are more restrictive than the claimant's reported activities of daily living." Tr. 28. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). However, to the extent the ALJ evaluated Plaintiff's activities, as discussed *supra*, the ALJ's conclusions are not supported by substantial evidence. Furthermore, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). The ALJ failed to explain how Dr. Magnuson and Ms. Love's findings are inconsistent with Plaintiff's activities. Since the ALJ offered no other reason for rejecting the opinion, the ALJ's finding is inadequate.[2]

/ / /

---

[2] The ALJ's finding is insufficient under any standard, regardless of whether clear and convincing, specific and legitimate, or germane reasons are required.

### 2. Dan Donahue, Ph.D., and Jan Lewis, Ph.D.

Plaintiff contends the ALJ incorrectly considered the opinion of reviewing psychologist, Dan Donahue, Ph.D., and failed to address the opinion of reviewing psychologist, Jan Lewis, Ph.D. ECF No. 9 at 11-12. In March 2015, Dr. Donahue reviewed the record and found Plaintiff's affective disorder is a severe impairment. Tr. 98. However, Dr. Donahue evaluated the "B" criteria of the listings and found mild restrictions in Plaintiff's activities of daily living, social functioning, concentration, persistence and pace, and no repeated episodes of decompensation. The regulations provide that if the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, the impairment is generally determined not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. § 404.1520a (2011). Here, there is a discrepancy between Dr. Donahue's finding that the affective disorder is severe and the conclusion of a nonsevere impairment under the "B" criteria. The ALJ gave some weight to Dr. Donahue's opinion "as the claimant's mental impairments are nonsevere," but did not address or resolve this inconsistency. Tr. 28. However, the ALJ's finding that Plaintiff's mental impairment is nonsevere at step two is supported by evidence other than Dr. Donahue's opinion. Tr. 23-24.

Additionally, Plaintiff notes that in May 2015, Dr. Lewis also found that Plaintiff's affective disorder is severe. ECF No. 9 at 11-12 (citing Tr. 110). Dr.

Lewis considered the "B" criteria of the listings but found there was "insufficient evidence" to make any findings. Tr. 110. The ALJ did not address or mention Dr. Lewis' opinion. Tr. 28. Plaintiff contends this triggered the ALJ's duty to develop the record because Dr. Lewis' conclusion that there is insufficient evidence to support "B" criteria findings suggests an ambiguity, and that there is a conflict with Dr. Donahue's findings. ECF No. 9 at 11-12. An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150. Given the ALJ's citation to other evidence in the record in making the step two finding, the Court concludes the discrepancies in considering the opinions of the reviewing psychologists are likely harmless. Notwithstanding, because this matter is remanded on other grounds, on remand the ALJ should ensure that all opinion evidence is properly considered and any discrepancies among the opinions are resolved.

**C.    Lay Witness**

Plaintiff contends the ALJ improperly failed to consider the lay witness statement from Plaintiff's husband. ECF No. 9 at 19-20. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is

rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

Plaintiff's husband completed a Function Report form in February 2015. Tr. 232-39. He indicated Plaintiff usually does not get out of bed until afternoon; that she helps with family chores and responsibilities as she is able, depending on how she is feeling; her pain is debilitating much of the time causing her to often sleep and stay in bed into the afternoon; and that her participation in household and family activities varies depending on the day. Tr. 233-37. Defendant concedes the failure to evaluate the report of Plaintiff's husband is error but argues the error is harmless because the same reasons for rejecting Plaintiff's symptom claims apply. ECF No. 11 at 14 (citing *Molina*, 674 F.3d at 1122). Because the ALJ's reasons for rejecting Plaintiff's symptom claims are not properly supported, the Defendant's argument fails. On remand, the ALJ should consider the lay witness statement of Plaintiff's husband.

**D.    RFC Finding**

Plaintiff contends the ALJ failed to provide a proper explanation for the RFC finding. ECF No. 9 at 14-15. The RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ should include those credible limitations supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (2004). Because the ALJ's

consideration of Plaintiff's symptom complaints, the opinion evidence, and the lay witness statement was flawed, the RFC finding is also in question.

Additionally, the only other medical opinion in the record is the opinion of Norman Staley, M.D., the state agency reviewing physician, whose opinion was also rejected by the ALJ.[3] Tr. 28. Once the ALJ rejected all the medical opinions in the record, the basis for the physical limitations in the RFC finding is unclear. While the RFC determination is the ALJ's responsibility, not any physician's, *see Vertigan*, 260 F.3d at 1049, the functional limitations assessed by the ALJ must be based on

---

[3] It is noted that the ALJ rejected Dr. Staley's opinion in part because, "the claimant was never examined by the consultant." Tr. 28. This is an improper reason for rejecting the opinion of a nonexamining physician, as ALJs are directed to consider all opinion evidence, regardless of source. 20 C.F.R. § 404.1527 (2012). Although a reviewing physician's opinion is entitled to less weight than a treating or examining physician's opinion, it does not follow that a reviewing opinion is therefore always entitled to little or no weight. *See Holohan*, 246 F.3d at 1201-02. Notwithstanding, as Defendant observes, Plaintiff was not prejudiced by the ALJ's rejection of Dr. Staley's opinion, as the limitations assessed by Dr. Staley are less restrictive than those included in the RFC. ECF No. 11 at 11.

substantial evidence. *See* 20 C.F.R. 404.1545. As a result, the matter must be remanded.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. The ALJ must reconsider Plaintiff's symptom complaints, the medical opinion evidence, the statement of Plaintiff's husband, and the residual functional capacity finding. On remand, the ALJ shall conduct a new sequential evaluation and obtain the opinion of a medical expert or a consultative evaluation to assess Plaintiff's fibromyalgia and other physical impairments. Although the ALJ is directed to reconsider the record including the mental health evidence, the ALJ is not required to obtain a consultative mental evaluation or psychological expert unless the ALJ determines such is appropriate.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** February 26, 2019.


_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge